UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | Jointly Administered |
| **TAYLOR INVESTMENT PARTNERS** | ) | |
| **II, LLC,** *et al.,* | ) | CASE NO. **15-51333** - MHM |
| | ) | |
| Debtors. | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | | - - - - - - - - - - - - - - - - - - |
| | ) | |
| MOE'S FRANCHISOR, LLC, | ) | |
| | ) | |
| Movant, | ) | |
| v. | ) | **CONTESTED MATTER** |
| | ) | |
| TAYLOR INVESTMENT PARTNERS | ) | |
| II, LLC, TIP II-ANSLEY, LLC, and | ) | |
| TIP II-SUBURBAN, LCC, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON STAY RELIEF**

This case is before the Court on Movant's *Motion for Relief from Stay*, filed February 23, 2015 (Doc. No. 44) ("Motion"). Movant asserts Debtors are legally barred from assuming their franchise agreements with Movant without Movant's consent, and Movant withholds such consent; therefore, Movant seeks relief from the automatic stay of 11 U.S.C. § 362 to terminate the franchise agreements. Hearing was held April 8, 2015, at which counsel for Debtors and counsel for Movant appeared and argued. For the reasons set forth below, the Motion is granted.

### A. Background

TIP II-Ansley, LLC and TIP II-Suburban, LLC operate Moe's Southwestern Grill franchises in Atlanta, Georgia and Decatur, Georgia, respectively. Taylor Investment Partners II is an affiliated entity through which the other two entities pay various common expenses, and also appears to be the franchisee of record with respect to both locations.

Pursuant to the franchise agreements, Movant is entitled to terminate the franchise agreements if certain defaults occur, including if Debtors repeatedly fail to meet certain franchise standards. To that end, Movant performs unannounced Restaurant Operation and Standards Evaluations ("ROSE"). Failing two consecutive ROSE inspections places Debtors in default with a 30-day opportunity to cure. If Debtors fail three ROSE inspections in a 12-month period, Movant may terminate the franchise agreement without a cure period.

Movant alleges Debtors failed consecutive ROSE inspections in June and December of 2012. As a result, Movant placed Debtors in default and conducted follow-up inspections in February of 2013, which, according to Movant, Debtors again failed. Debtors disputed the results of the ROSE inspections. After several termination deferrals, Debtors and Movant arbitrated their dispute. The arbitrator recommended an additional inspection. Movant asserts Debtors' Decatur location failed the final inspection; accordingly, Movant sent a termination notice regarding the Decatur franchise

agreement, giving Debtors six months to sell or vacate.  Debtors filed their Chapter 11 petitions January 22, 2015, shortly before the termination deadline.

**B. Discussion**

    1. Debtors may not assume the franchise agreement without Movant's consent.

Movant now argues, pursuant to 11 U.S.C. § 365(c), Debtors may not assume the franchise agreements without Movant's consent, which it withholds.  Section 365(c) provides

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if --
>   (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession …; and
>   (B) such party does not consent to such assumption or assignment[.]

Movant argues that Debtors have the authority to assume or reject an executory contract under 11 U.S.C. § 365(a) by virtue of §1107(a), which provides a debtor in possession with the rights and powers of a trustee, "subject to any limitations on a trustee serving in a case under this chapter[.]"  Section 365(c) restricts a trustee's power to assume an executory contract if, under applicable law, the other party to the contract would be excused from rendering performance to an entity other than the debtor.  Movant argues

3

that because applicable trademark law would prevent Debtors from assigning the franchise agreement without Movant's consent, a trustee could not assume the franchise agreement. And because Debtors, as debtors in possession, exercise the powers of a trustee subject to the same limitations as a trustee, Movant argues that Debtors are similarly restricted from assuming the franchise agreement. Debtors apparently do not contest that the franchise agreements are executory contracts or that applicable trademark law would bar Debtors from transferring the agreements without Movant's consent[1]; instead, the sole issue before the court is whether the restriction of § 365(c) applies to debtors in possession.[2] A circuit split exists as to that issue, and the parties disagree as to whether this Circuit has precedential authority on the topic.

Movant's interpretation of the interaction of § 365(c) and § 1107 is supported by decisions of the 3d Circuit, *Matter of West Electronics, Inc.*, 852 F.2d 79 (3d Cir. 1988), the 4th Circuit, *In re Sunterra Corp.*, 361 F.3d 257 (4th Cir. 2004), and the 9th Circuit, *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999).

---

[1] These issues were not argued by Debtors in briefs or at hearing. The franchise agreements clearly are executory contracts within the meaning of § 365(a), in that they are "contracts on which performance is due to some extent on both sides." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984) (quoting H.R. Rep. No. 95-595, p. 347 (1997). Federal trademark law precludes unauthorized assignment of a non-exclusive trademark license, such as those found in the franchise agreements. *Matter of Travelot Co.*, 286 B.R. 447 (Bankr. S.D. Ga. 2002); *In re Trump Entertainment Resorts, Inc.*, 526 B.R. 116 (Bankr. D. Del. 2015) ("[F]ederal trademark law generally bans assignment of trademark licenses absent the licensor's consent[.]").

[2] If this issue of law were not an impediment, then the particular facts regarding the ROSE inspections would become relevant.

4

Of the appellate courts to have faced the issue, Debtors point only to the 1st Circuit as adopting a test contrary to Movant's interpretation. In *Summit Inv. & Development Corp. v. Leroux*, 69 F.3d 608 (1st Cir. 1995), the 1st Circuit applied the *ipso facto* clause of 11 U.S.C. § 365(e) to invalidate a provision of a limited partnership agreement which purported to convert the debtors' general partnership interests into general partnership interests upon the filing of their bankruptcy petitions. Section 365(e)(1) provides, "Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract ... of the debtor may not be terminated or modified, and any right or obligation under such contract ... may not be terminated or modified ... solely because of a provision in such contract ... that is conditioned on ... (B) the commencement of a case under this title[.]" However, § 365(e)(2) states § 365(e)(1) does does not apply if "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease ... ." Although § 365(c) was not at issue in that case, the 1st Circuit analogized the language of § 365(e)(2) and § 365(c). Finding more than one plausible interpretation of the statutes, the *Leroux* court looked to the legislative history of § 365(c), and determined that § 365(c), and by analogy § 365(e)(2), was not meant to apply unless the executory contract would *actually* be assumed or assigned by a non-debtor party, as opposed to whether a *hypothetical* assignment would be barred by

5

applicable law. Subsequently, the 1st Circuit cited its analysis in *Leroux* in deciding a case that did implicate § 365(c), again concluding that the exception applies only if the executory contract would *actually* be assumed by or assigned to a party other than the debtor. *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489 (1st Cir. 1997), abrogated on other grounds by *Hardemon v. City of Boston*, 1998 WL 148382 (1st Cir. April 6, 1998). Debtors also cite a number of lower court decisions across the nation as favoring the 1st Circuit's "actual" test. *E.g. In re Cajun Electric Power Co-op., Inc.*, 230 B.R. 693 (Bankr. M.D. La. 1999); *In re Cardinal Industries, Inc.*, 116 B.R. 964 (Bankr. S.D. Ohio 1990); *Matter of GP Express Airlines, Inc.*, 200 B.R. 222 (Bankr. D. Neb. 1996).

A third approach comes to the same result as the 1st Circuit's "actual" test, but under different reasoning. In *In re Footstar*, 323 B.R. 566 (Bankr. S.D.N.Y. 2005), the court distilled the circuit split down to whether the word "or" in the statutory language "assume or assign" should be read literally in the disjunctive, as in the 3d Circuit's "hypothetical" test, or construed as the functional equivalent of "and," as in the 1st Circuit's "actual" test. Rather than focus on whether the statute contemplates an actual assignment or a hypothetical assignment, the *Footstar* court focused on the interaction between § 365(c) and § 1107. "[Section 365(c)(1)] *does not* say that the debtor or debtor in possession may not assume or assign – the prohibition applies on its face to the

'trustee.'" *Footstar*, 323 B.R. at 570. The *Footstar* court criticizes courts adopting the "hypothetical" test "in that all three proceed from the premise ... that "trustee" ... means "debtor in possession," but § 1107 does not make the terms "trustee" and "debtor in possession" equivalent terms. *Id.* at 570-71. Having made that distinction, the *Footstar* court reasons that the restriction of § 365(c), as applied to a debtor in possession pursuant to § 1107, does not logically restrict a debtor in possession from assuming the executory contract in question. The statute "is quite logical and sensible as written" when applied to to trustees, because it "is vindication of the right under applicable law of the contract counterparty to refuse to accept performance from or render performance to an entity 'other than the debtor or the debtor in possession.'" *Id.* at 573. However, reading the statute to restrict a debtor in possession from assuming such a contract simply "makes no sense." *Id.*; *see, also, In re Aerobox Composite Structures, LLC*, 373 B.R. 135 (Bankr. N.M. 2007).

The pragmatic approach of *Footstar* certainly has appeal, but Movant argues that we are bound to the "hypothetical" test by the 11th Circuit's decision in *In re James Cable Partners, L.P.*, 27 F.3d 534 (11th Cir. 1994). Debtors acknowledge that the 11th Circuit appears to have articulated the "hypothetical" test, but contends that it did so in dicta because the case ultimately turned on the definition of applicable law, not whether § 365(c) applies to a debtor in possession.

James Cable Partners, L.P., held a cable franchise agreement with the city of Jamestown, Tennessee. The partnership filed a petition under Chapter 11 of the Bankruptcy Code in 1991, and proposed a Plan of Reorganization in which it would assume the cable franchise. Jamestown objected to the assumption, contending that 11 U.S.C. § 365(c)(1) prohibits the assumption without the City's consent because the municipal ordinance granting the franchise prohibits assignment absent consent from the City. James Cable argued, as Debtors now argue, that § 365(c)(1) does not prohibit assumption of an executory contract by a debtor in possession. The 11th Circuit acknowledged the tension among various courts between the "hypothetical" test and "actual" test, and noted that the district court had rejected the "hypothetical" test; however, rather than analyze the reasoning of the various cases, the 11th Circuit simply stated,

> Under the plain language of § 365(c)(1), James Cable (debtor in possession) may not assume the cable franchise agreement (an executory contract), without regard to whether the cable franchise agreement contains a prohibition against assignment, if two conditions are met. First, 'applicable law' must excuse the City from accepting performance from an entity other than James Cable as debtor or debtor in possession. Second, the City must not have consented to the assumption of the cable franchise agreement.
> …
> The first condition presents a hypothetical question: Whether under applicable law the City is excused from accepting performance from a third party, that is, a party other than James Cable as debtor or debtor in possession.

8

*James Cable Partners, L.P.*, 27 F.3d at 537 (parentheticals supplied in original). The court then decided that applicable law did not excuse the City from accepting performance from a party other than James Cable; therefore, § 365(c) did not bar James Cable from assuming the agreement.

Debtors argue that *James Cable*'s enunciation of the "hypothetical" test was dicta[3] – the *James Cable* court did not need to reach the issue of whether the restriction of § 365(c)(1) applies to a debtor in possession, because applicable law did not excuse the City from accepting performance from a third party. Debtors contend that, if *James Cable*'s pronouncement of the plain meaning of § 365(c)(1) is dicta, such pronouncement is not binding on this Court.[4]

The 11th Circuit's pronouncement – that §365(c)(1) would prevent a debtor in possession from assuming an executory contract if applicable law would excuse the other party to the contract from accepting performance from a party other than the debtor in possession – is not dicta. The *James Cable* Court was presented with a question: whether whether § 365(c)(1) prevented a debtor in possession from assuming an executory

---

[3] "[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before [the Court]. Conversely, the holding of a case is … comprised both of the result of the case and those portions of the opinion necessary to that result … ." *U.S. v. Kaley*, 579 F.3d 1246, n.10 (11th Cir. 2009) (internal quotations and citations omitted).

[4] As discussed below, *James Cable*'s application of § 365(c)(1) is not dicta. However, even if it were dicta, lower courts should generally "give great weight to the pronouncements of [their] Court of Appeals, even though those pronouncements appear by way of dictum." *Patsy's Italian Rest., Inc. v. Banas*, 508 F.Supp.2d 194, 209 (E.D.N.Y. 2007).

9

contract. It analyzed the statute and articulated a rule from that statute: a debtor in possession may not assume an executory contract if (1) applicable law would excuse the other party to that contract from accepting performance from a party other than debtor in possession and (2) that other party does not consent to the assumption. It then applied that rule to reach a result. The applicability of the statute was a point of contention in *James Cable*, but the Court did not purport to assume, *arguendo*, that the statute applied to a debtor in possession; *James Cable* unequivocally holds that a plain reading of the statute burdens a debtor in possession with the restriction of § 365(c).

Debtors illogically argue that the result of the *James Cable* Court's application of the rule makes unnecessary its decision to apply the rule, but the result must follow from the application. Compare to *Footstar*, 323 B.R. at 569 ("Since I conclude that Section 365(c)(1) is not applicable ... I do not reach this second issue [of whether "applicable law" excuses the contract counterparty from accepting performance from or rendering performance to an entity other than the debtors.]").

Having determined that the 11th Circuit's decision sets binding precedent for this court to follow, the result is clear: Debtors may not assume the franchise agreement if (1) applicable law would excuse Movant from accepting performance from a party other than Debtors, and (2) Movant does not consent to Debtors' assumption of the executory contract. The Lanham Act excuses Movant from accepting performance from a party

other than Debtors, and Movant does not consent to Debtors' assumption of the executory contract. Accordingly, Debtors are barred from assuming the franchise agreement.

2. Debtors' "ride through" argument is unavailing.

In an alternative argument, Debtors suggest that they do not need to assume or reject the franchise agreements; instead, the agreements may "ride through" the bankruptcy case unaffected. In support, Debtors cite *In re JZ, LLC*, 357 B.R. 816 (Bankr. D. Idaho 2006), which reads 11 U.S.C. § 365 as permissive – *i.e.*, a trustee "*may* assume or reject any executory contract or unexpired lease of the debtor" – and "the failure to assume or reject an executory contract does not automatically result in an assumption or rejection of the contract." *In re JZ, LLC*, 357 B.R. at 820. The *JZ* Court notes that the "ride-through doctrine" is a well-recognized legal doctrine. *E.g. N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 546 n.12 (1984) ("In the unlikely event that the contract is neither accepted nor rejected, it will "ride through" the bankruptcy proceeding... ."); *In re Hernandez*, 287 B.R. 795 (Bankr. D. Ariz. 2002) (discussing the history of the ride-through doctrine). If a debtor fails to affirmatively assume or reject an executory contract, the contract may "ride through" the bankruptcy case; the contract "is unaffected by the bankruptcy and the interests of both parties to the contract are preserved." *Hernandez*, 287 B.R. at 801.

*Hernandez* is directly on point with the circumstances of this case. In *Hernandez*, the debtors licensed patented technology and sought to assume the license; however, the licensor objected to the assumption of the license agreement under § 365(c) and *Catapult, supra*. The debtors argued that, even if they could not assume the contract under § 365(c), the contract could ride through the case unaffected. The *Hernandez* court agreed that an executory contract not assumed or rejected may ride through a case unaffected, but cautioned that invoking the doctrine prevents many of the protections of the bankruptcy code. "The debtor may not treat an executory contract in a Chapter 11 plan and at the same time effect a ride-through of that contract – these are inconsistent proposals." Moreover, a contract not assumed under § 365 is not entitled to the protections of § 365 – such as the proscription against *ipso facto* clauses – and may not be discharged through a Chapter 11 plan. After determining that ride-through is permissible, the *Hernandez* court stated, "the court has already determined that the Debtors cannot assume the Agreement or otherwise treat it in their Plan. Therefore, cause cause exists to lift the automatic stay and allow the Objectors to enforce whatever rights they may have under applicable non-bankruptcy law."

The reasoning in *Hernandez* is persuasive. Debtors may not assume the franchise agreements under § 365(c). The options remaining are to reject the agreements – upon which Movant could treat the agreements as terminated under § 365(n) – or to attempt

ride-through – meaning Debtors could not treat the franchise agreements in Debtors' bankruptcy case. In light of this eventuality, cause exists to modify the stay to allow Movant to exercise its state-law rights with respect to the agreements. Accordingly, it is hereby

**ORDERED** that the Motion is *granted:* the stay of § 362 is *modified* to allow Movant to exercise its rights against Debtors with respect to the franchise agreements.

The Clerk is directed to serve a copy of this order upon Debtors, Debtors' attorney, Respondent, attorney for Respondent, and the U.S. Trustee.

IT IS SO ORDERED, this the 29th day of June, 2015.

MARGARET H. MURPHY
UNITED STATES BANKRUPTCY JUDGE